First case today is 525-0039 Eads et al. v. Abernathy. I've got Mr. Laugher and Mr. Baldwin. Are you ready to proceed? Yes, sir. Come on up to the table. And again, just state your name and address, please. I'm Michael Laugher. I represent Patty Dorman Eads, who is the trustee of the William H. Dorman Trust. That trust owns property at 25 Path Drive in Collinsville, Illinois, which abuts property owned by the appellee, Amanda Abernathy, at 2381 Keebler Drive in Collinsville. I was aware of the procedural course of this case, and I will refer to it only as necessary, but this case does involve a quiet title action over the boundary between these two properties. The first issue to get through raised by the appellee is that there is no appellate jurisdiction because the notice of appeal was not timely filed. The order of the court entered on December 12th of 2023 was not a final order because the court expressly reserved the issue of the amount of the sanctions. There was not a final judgment in this case until December 16th of 2024, and the notice of appeal was timely filed on January 15th of 2025 within 30 days of saying. The appellee mistakenly argues that the notice of appeal is not timely filed because a post-file motion was not filed within 30 days. That argument misses the point. While the appellee's post-file motion was filed more than 30 days after the court's order of December 14, 2023, that order was not a final judgment for purposes of appeal to this court under Rule 303. It is clear that a final judgment is one that fixes absolutely and finally the rights of the parties and disposes of all the issues in the case. Where the trial court determines liability for attorney's fees but reserves ruling on that amount, the judgment is not final and appealable as per Marsh v. Evangelical Covenant Church. There, the L&I claim for attorney's fees that is part of the relief sought. Further, it is certainly interesting in this case that the case cited by the appellee as a basis for being a final and appealable judgment when, in fact, the case says the opposite. It is clear that the court did not assess the amount of attorney's fees as the sanction. Thus, not all of the issues for the court were decided in the December 14, 2023 order or judgment. Thus, it is not final. It is not final for purposes of appeal. Argument number two is that the evidence in this case was clearly against the manifest weight of the evidence because the only expert testimony presented and admitted was that of Mr. Michael Andreas. And further, it was, in fact, demonstrated to be accurate by further expert corroborating testimony from Jeff Pock's affidavit where the boundary line was located and the fence was encroaching on appellant's property as appellee did not provide any expert testimony supporting her position. They presented no competent evidence. Appellee frames this appeal as a routine manifest weight challenge governed by deference to credibility determinations, and that characterization is clearly incorrect. The issue before the trial court was whether the fence encroached on a legal boundary. Appellant provided the only competent evidence on this point, determining the location of a boundary property line is a technical matter requiring reference to recorded instruments, monuments, and measurements in methodology. It is not a question resolved by personal belief alone. Even though licensed surveyor testified that the fence did not encroach, there was no competing survey that was introduced. In fact, the appellees did have a survey done which was never introduced into evidence in this case. The only evidence addressing the boundary's physical location consisted of measurement-based analysis, and the appellee's and court's contrary position and finding rests solely on lay testimony. The factual finding by the court that the fence did not encroach was not supported by competent evidence. In Lay v. Kemp, a central district of Illinois federal court case in a land dispute, made it clear that where there is a boundary between landowners, expert testimony trumps lay testimony, stating that the court concluded that the plaintiffs, as admitted laypersons, cannot provide opinion testimony regarding the proper methodology for determining the extent of township right away, no matter how convinced they are right and everyone else is wrong. Thus, no matter how much appellee argues that the testimonies of the witnesses, their witnesses, were more credible, evidentiary support for their position fails because it is not competent evidence. Now, clearly, in the appellee's brief at page 10, they argue that the trial court found that the appellee's testimony was persuasive, but that testimony, as I indicated, was not based on any technical aspect, only that when she built the fence, no one objected, and that she asserted she was adamant that she had built her fence on her property as established by the property pins and straight lines found by the iron workers. It is hardly the kind of expert testimony that courts require in boundary determinations under Rule 701. There, the witness's testimony in the form of opinions or inferences should be limited only to those opinions or inferences which are rationally based on the perception of the witness, be helpful to a clear understanding of a witness's testimony or determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge. Here, the court's determination that Michael Andreas was, because he was not a licensed professional surveyor, that he was therefore not qualified to give expert testimony was clearly erroneous because he did have that knowledge and skill, and further, later, a licensed surveyor did verify that what he found regarding the location of the land boundary between the two properties was, in fact, accurate. Here, Mr. Andreas had 50 years of surveying experience. So, the evidence from the surveyor that you referenced, and I think you referenced an affidavit from the surveyor, was that evidence presented at the trial? No, that was not. That was presented in my post-trial motion. And it was simply there to demonstrate the credibility of the testimony of Mr. Andreas. Mr. Pak is a licensed surveyor. Basically, the Illinois courts don't require licensure for the admission of expert testimony. In fact, the lack of licensure should not be construed as a prerequisite to expert testimony. That is merely one factor in the qualification. And the cases of Thompson v. Gordon, which overruled the licensing requirement for People v. West, stating it is clear here that the trial court abused its discretion in not considering Mr. Andreas' expert opinions while technically admitting it into the record. And finally, the plaintiff, or the appellee, characterized as newly discovered evidence. It was not newly discovered evidence. It was simply to demonstrate that the evidence from Mr. Andreas was, in fact, good and competent and expert testimony. With that in mind, you will recall that this court, that the trial court issued attorney's fee sanctions because they felt that the case was not brought in good faith. This court's granting of sanctions is not warranted. First of all, there was never any formal motion for saying, and there can be no basis for sanctions, when the only expert testimony about the boundary location was the testimony of Mr. Andreas that the fence did, in fact, encroach. Counsel, though, I understand that Rule 137B says that all proceedings under this rule shall be brought within the civil action in which the pleading motion of the document referred to has been filed, and says the motion is brought pursuant to this rule. So no motion was filed. No motion was filed. I mean, basically, all there was, Gerardo, was a vague request by appellee's attorney in his closing argument, and as such, the appellate never had the opportunity to be heard on the propriety of these sanctions. And this is another clear case of the abuse of discretion by the trial court here. My note is, I believe you filed a brief in opposition prior to the hearing, correct? I did. I did, Your Honor. And a hearing on the sanctions was held on December 16, 2024? As part, well, not per se on the sanctions, but that was as part of my post-trial motion, which was basically asking Judge Motel, I'm trying to give you an opportunity to correct these rather egregious errors here, but there was not ever any specific hearing on the amount of those damages. As stated, the only competent evidence here regarding the boundary was from the appellate here, and this point, the fact that there was no motion heard or filed was not responded to by the appellee. Is it your position, counsel, that the trial court lacked authority to sui sponte and impose sanctions following the trial? I believe that the statute or that the rules require at least, I think, a good opportunity to respond to that. And there was none before the order of December 12 of 2023. There was only the opportunity or only my post-trial motion, which I don't believe that that is what is contemplated by the statutory schema there. Finally, the actions of a non-party should not be considering when assessing damages for bringing the action in good faith. The trial court cited the order of protection involving the appellant's brother, Robert Dorman, is irrelevant to the sanctionable conduct as it must be between the two litigants, and thus there was really no bad faith evidence presented about the appellant. The circuit court's reliance on the alleged feud going on between appellee and Robert Dorman was an improper basis for sanctions, as this personal dispute is irrelevant and immaterial to the legal matters and whether or not there was a boundary violation. The focus of this court on this dispute as a basis to override the only expert testimony in this case clearly violates the requirement in Illinois law that they are to be penal in nature and must be strictly construed with the focus being on the conduct occurring in the litigation rather than extraneous interpersonal conflicts. The fact that this action was filed after the appellee filed a no-contact order against Mr. Dorman is irrelevant because it is outside the pleadings and there was no evidence that the appellant was complicit in the filing of say. In conclusion, appellant asks this court to reverse the trial court's judgment, and when entered in this case on December 16, 2024, to return the matter to the Madison County Trial Court to hear this case on its merits and for any other orders and further directions that are just in the promises. Thank you very much. Any questions, Justice Baldwin? No questions. Thank you. All right. Thank you, counsel, and obviously you'll have your time to revoke. Thank you. Mr. Baldwin? Thank you. May it please the court, my name is Phil Baldwin. I represent the appellee, Amanda Abernathy, in this matter. This case comes to the court after a bench trial in which the circuit court heard testimony, evaluated witnesses, considered the exhibits, and ultimately entered judgment for Ms. Abernathy. The trial court found that the appellant failed to carry her burden to prove that Ms. Abernathy's fence encroached on the appellant's property. The court specifically found the appellant's evidence unpersuasive and found Ms. Abernathy's testimony reasonable and persuasive. That finding is entitled to substantial deference. Opposing counsel is asking this court to do exactly what the manifest weight standard forbids, reweigh the evidence, substitute its judgment for the trial judge who actually saw and heard the witnesses in this case. Before we get to that issue, sufficiency of evidence on this jurisdictional point, are you in disagreement here with counsel that you're taking the position that we do not have jurisdiction? I do disagree with counsel. Can you tell me why that is, please? Yes. This case was initially heard at trial on September 21st and 25th of 2023. The final order entered by the court was entered on December 14th of 2023. The motion that we consider after a change in counsel, and I believe November of 2024, was filed on December 9th of 2024. That's almost exactly a year after the court entered its final order in the matter. The court, as you pointed out earlier, determined that this was a frivolous action, and set it for a future date to determine the amount of those sanctions. But it was not on motion of defendant or the appellee that the court set this matter. It was on the court's motion to determine the amount of said sanctions. This case goes back... Let me address your question first. Yes, are you drawing a distinction between the court's sua sponte imposing sanctions versus a motion being filed for sanctions in terms of the jurisdictional issue? No, and that's why I want to get back to the point to address your question. In this matter, counsel and I obviously have a different reading of Marsh v. Evangelical Church. In that matter, the winning party had filed a 2611 motion requesting attorney's fees in that case. That was filed 29 days after the entry of judgment in that matter. This court ultimately went on to determine that the amount of attorney's fees don't stay the timeliness of the filing of a motion for appeal. Our argument is based upon the fact that the original opposing counsel had 11 months to file a motion for appeal. The opposing party had 11 months to seek new counsel, which they ultimately did. They could have sought new counsel within that 30-day period. But everything in the record of this case, including the docket entries which have been submitted to this court, say that this was a final appealable order telling every competent attorney that they had 30 days to file a motion for appeal. That did not happen in this case. I understand that this is not opposing counsel's problem at this time, as he didn't get into the case until 11 months after the case was resolved. So that's what I'm basing our jurisdictional challenge on. I don't believe that this court has jurisdiction over this matter. However, if the court believes otherwise, I have prepared to argue the remaining points of counsel. Just to be clear, following the trial, there was a written judgment entered. The court sui sponte imposes sanctions and then reserves the amount for further hearing. And then that hearing does not occur until December, or the award is December 20 of 24. And this appeal is filed within 30 days thereafter on January 15 of 25. Is that accurate? All of that is accurate, Your Honor. Okay. All right. You may proceed. Opposing counsel argues that the trial court's judgment was against the manifest weight of the evidence. However, the trial court in this matter concluded that Ms. Abinasi's fence did not approach under appellant's property. And that conclusion should be affirmed unless the opposite conclusion is clearly evident where the trial court's finding is unreasonable, arbitrary, or not based on the evidence. The trial court specifically found that Mr. Andrea's testimony was not credible and unpersuasive. Several things that the trial court alluded to in making that determination was the fact that on the stand, Mr. Andreas was Googling the efficiency of his own equipment that he was testifying in court about that day. He initially testified that the equipment that he was using was accurate to sub-meter accuracy. When challenged on the fact that this case involves a matter of under 12 inches, potentially, actually, by their own allegations, less than a 12-inch difference, he pulled out his phone, started Googling, and changed his testimony to say, no, it's sub-decimeter testimony. Now, I have to tell you, I was unfamiliar with the term decimeter and exactly how short a measure of distance that is, but a decimeter is approximately four inches, based upon my research. The court also took into consideration the fact that Mr. Andreas and the parties in this case were friends. They had canvassed together. They had been friends for over a year. They did not pay Mr. Andreas for his work. This was not a contracted survey, and he acknowledged in court that he was not competent to establish property corners on this property because he's not a licensed surveyor. Now, whether or not Mr. Andreas, in some context, could be considered an expert in some types of testimony, I cannot say. He does have education. He does have experience at doing whatever it is that he did, but he didn't testify about that in court. He didn't bring up whether or not he had produced land surveys that were used for establishing property lines. He went out for a friend who told him, this is the corner of my line of my property. That's the corner of my property. I want you to make me a graph. This is contravened by the fact that they had just hired a licensed surveyor, Mr. Park, to come in and conduct a survey of the property. Now, opposing counsel in that case never approached us to say we need a continuance. Mr. Park is unavailable on that trial date. They had every opportunity to do so. This case dragged out for a year between the time that it was filed in 2022 and the trial date in 2023. There was no reason that they could not have brought the surveyor in to bring a plot map showing the location of the fence, showing the corners of the property, establishing those by latitude and longitude, and yet what we have, what you have before you, is a gentleman who brought in a friend with a piece of equipment and gave him the result that he asked for to show that this fence was on his property, which brings up the point, why are we here in the first place? This matter goes back well before 2022. The plaintiff in this property dispute is a member of the William Dorman Trust. The other member of the William Dorman Trust is Robert Dorman. When opposing counsel says that whatever Robert Dorman did should be ignored by this court because he's not a party to this case, should be considered in the context of the fact that these two individuals, Patricia Eades and Robert Dorman, are brother and sister, that this property dispute was filed less than a week after my client succeeded that trial against Robert Dorman in an OP case. Not just an OP case, a violation of an order of protection case, whereby Mr. Dorman had been found to have harassed and intimidated my client for over a year. He loses a trial and less than a week later we've got a filing on a piece of fencing that had existed for 30 years between these two neighboring properties. A piece of property, by the way, that Patricia Eades does not live on and which Robert Dorman does. That's what this case is about. That's why we're here today. Judge Motel was the trial judge in the other action. He was the trial judge in this action. He was well aware of the interconnectivity between these parties and Robert Dorman. Counsel has brought up the affidavit of Mr. Paulk that was introduced after trial as something that the court should consider to be persuasive. And yet I would point out that this is new testimony. The fact that they had Mr. Paulk available to testify at trial and they chose not to exercise that option should not be held against my client. I believe that based on all the arguments raised today, last issue, Sanction 137 sections, we covered that a little bit. And before you run out of time, if you could respond to counsel's point that his client had no opportunity to be heard before the court suespante imposed sanctions following the trial. Opposing party and opposing counsel had a year to be heard. They had a year to file a motion to reconsider. They had a year to file a brief in opposition to attorney's fees. They had every opportunity in the world to be heard on this matter and subsequently were heard on this matter. Opposing counsel filed a brief in opposition to the attorney's fees. Judge Motel took that into consideration. Based upon all of the factors and his determination that attorney's fees and sanctions were appropriate in this case, opposing counsel's motions were overruled. Thank you. No further questions, thank you. Thank you, counsel. Thank you.  May it please the court, on the jurisdictional issue, Mr. Baldwin talks about the Marsh case. I think the Marsh case is very clear that where an order is not final if it fails to dispose of a claim for attorney's fees for the relief sought. There was not a specific finding here that this was final and appealable for purposes of appeal under that particular rule. It's clear that there was, that the court was holding this out. I mean, he argues, on the other hand, well, they had all this time and the court did hear the motion, my motion, to reconsider on the attorney's fees. I don't think you can have it both ways. I think this court has jurisdiction of this matter very clearly. You know, regarding the evidence, the question really is competency of the evidence. And I didn't hear anything from Mr. Baldwin about the fact that there was no competent evidence here as to whether the fence did encroach across a legal boundary. The fact of the matter is that Judge Motel simply found that all of the evidence presented by the defendant, by the appellant, was not persuasive. Had it been admitted properly, it would have been the only competent evidence because we know that this fence did, in fact, encroach on the boundary. And we know that because that's what Mr. Pauk, in his affidavit, affirmed. Now, the fact of the matter is that the refusal to allow Mr. Andreas to testify was clearly an abuse of discretion. Turning to the sanctions, now, this fence hadn't been there for 30 years. This particular part of the fence, there was part of the fence that may have been there for 30 years, but the part that was encroaching had just been built in the last few years. And all of the, well, description of what he perceived the evidence to be with regard to the appellant's brother, Robert Dorman, I don't think that's in the record at all. And the fact of the matter is it is not really in the record. And the upshot is that there is nothing in the record that demonstrates that my client was complicit, that she filed this in bad faith. As a matter of fact, she had evidence from not only Mr. Pauk, but Mr. Andreas, when she filed this, that that fence did, in fact, encroach. And with that kind of evidence, I just don't see how sanctions can be introduced. The relationship with Robert Dorman, is that something the trial court put on the record that it had considered in ordering sanctions? I believe so. Was it in the record? I believe that is in the record, but there wasn't particular evidence adduced to that. And when did the court say that, or where was that in the record? I believe it's in the order of December 14th of 2023, Your Honor. Okay. But I would point out it's still, there is still nothing, the fact that Judge Motel knew about the order of protection, there is nothing, there is no evidence that my client specifically brought this action because of that. And whether or not they did, whether or not she did know that, it's still, there was still a good faith basis to bring this lawsuit. And that is that the only competent evidence that there has been in this case is that the fence encroached. And so for that reason, I ask that this court remand this case and with further instructions to have the matter properly heard. Thank you. Justice McCain? No questions. Mr. Feller, any further questions? No further questions, thank you. Thank you, counsel. We will take the matter under advisement. We will issue an order in due course.